Claudia Center, State Bar No. 158255
Jinny Kim, State Bar No. 208953
THE LEGAL AID SOCIETY - EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, CA  94104
Telephone:  (415) 864-8848
Facsimile:  (415) 593-0096
Emails:  ccenter@las-elc.org, jkim@las-elc.org

Timothy Elder, State Bar No. 277152
TRE Legal Practice, LLC
1126 East 36th Street
Baltimore, MD  21218
Telephone:  (410) 415-3493
Facsimile:  (888) 718-0617
E-mail:  telder[at]trelegal.com

Attorneys for Plaintiffs

## THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI FARAJ, on behalf of himself and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>MARRIOTT INTERNATIONAL, INC. and HOST HOTELS & RESORTS, L.P.,<br><br>    Defendants | CLASS ACTION<br><br>Case No. 13cv0300 BEN(KSC)<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT; THE FAIR EMPLOYMENT AND HOUSING ACT; AND THE UNFAIR BUSINESS PRACTICES ACT<br><br>DEMAND FOR JURY TRIAL |

   Plaintiff Ali Faraj, on behalf of himself and all others similarly situated, for claims for relief against defendants, and each of them, alleges as follows:

### INTRODUCTION

  1. This is an action for relief arising from the Defendant employers' violations of its disabled employee plaintiffs' civil rights in contravention of the Americans with Disabilities Act of 1990

(ADA), 42 U.S.C. § 12101, et seq., the Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12900, et seq., and the Unfair Business Practices Act, Cal. Business & Prof. Code § 17200, et seq.

2. The San Diego Marriott is owned by Defendant Host Hotels & Resorts, L.P. ("Host Marriott") and operated by Defendant Marriott International, Inc. ("Marriott International"). Plaintiff Faraj is informed and believes, and thereupon alleges, that he is jointly employed by Defendant Host Marriott and by Defendant Marriott International (collectively "Marriott").

3. Plaintiff Faraj is a blind employee who has worked for the Marriott hotel chain since 2005. Mr. Faraj has always successfully performed the essential functions of his job, including the daily use of computer software in his current position as an Event Billing Specialist. Mr. Faraj and many other blind employees of Marriott use computers by relying on a screen reader software program called Jobs Access with Speech ("JAWS") that translates visual text displayed on a computer screen into audible synthesized speech or refreshable Braille data. JAWS enables blind people to access documents and other digital information on a computer and thus become productive and independent workers.

4. Beginning in 2008, Plaintiff Faraj sought to advance to a management position with Marriott. However, management positions at Marriott require the employee to use a Sales Force Automation ("SFA") software program called Siebel CRM (Customer Relation Management). Marriott has refused to configure or modify its SFA software so that disabled persons such as Plaintiff Faraj who use JAWS or other screen-reading software can work in management level positions. Moreover, defendants are expanding the use of the inaccessible Siebel CRM software configuration to replace software currently used by plaintiff Faraj and many entry and midlevel disabled employees. This consolidation of software into Siebel CRM will prevent current blind employees from performing their job functions and will create barriers to the hiring of blind employees.

5. That defendants' configuration of Siebel CRM is inaccessible to disabled persons such as Plaintiffs is well-known to Marriott's corporate and regional management, including Mr. Faraj's direct superiors. On numerous occasions from 2008 to the present, Mr. Faraj has discussed the Siebel CRM access problems with all levels of Marriott management and human resources. Plaintiff has repeatedly requested changes and reasonable accommodations that would enable him to perform all of the

essential functions of management positions at Marriott, including those requiring the use of SFA software.

6.   In addition to its SFA software, Marriott also requires Plaintiff Faraj and other blind employees and applicants to use other software that is not configured to be accessible to screen reader programs.

7.   Marriott has engaged in a pattern or practice of purchasing, installing and configuring job-related software in a manner that prevents blind employees and applicants from advancing or receiving employment opportunities.  Marriott has continually engaged in this pattern or practice in spite of complaints from blind employees and applicants who have been denied advancement and employment opportunities.

8.   From 2008 to the present, Mr. Faraj made repeated requests to his supervisors that he be permitted to participate in Marriott's management training program.  Completing the program is a prerequisite for advancing to a management position at Marriott.  Plaintiff is informed and believes, and thereupon alleges, that he was excluded from the management training program during this time on the basis of his disability.

9.   In 2011, after contacting Marriott Human Resources, Plaintiff Faraj was permitted to complete the management training.  Thereafter, Mr. Faraj began applying for management positions.  HR managers told Mr. Faraj that he was more qualified than many of the candidates selected for management positions, but instructed him not to apply to any position requiring use of Siebel CRM.  Nevertheless, Mr. Faraj applied for approximately 25 management positions, all of which required use of Siebel CRM.  He was rejected from all openings.  Mr. Faraj is informed and believes, and thereupon alleges, that he was rejected from these positions on the basis of his disability.

10. Plaintiff Faraj intends to continue to apply for management positions at Marriott.  Without changes, Marriott's inaccessible SFA software continues and Marriott's pattern and practice of configuring inaccessible software used by employees continues to screen out Mr. Faraj and a class of similarly situated persons with disabilities who use screen-reading software.  Without changes, Mr. Faraj and the other class members cannot enjoy equal employment and promotional opportunities.

11. After engaging with Marriott management and human resources about the access problems with

Siebel CRM, Plaintiff Faraj experienced retaliation and interference as follows: his manager told him he had a bad attitude and could always find a job somewhere else, his duties were reduced compared to other Billing Event Specialists, and he was given a lower score on his periodic performance review than usual without any changes in his performance or duties to explain the difference.

12. On behalf of himself, and a class of similarly situated individuals with respect to employment and promotional opportunities, Plaintiff Faraj seeks declaratory and injunctive relief, lost compensation and other employment benefits and compensatory and punitive damages, and reasonable attorneys' fees and costs, for Defendants' violations of his rights and the rights of the class under the ADA.

13. Plaintiff Faraj also seeks declaratory and injunctive relief, lost compensation and other employment benefits, compensatory and punitive damages, restitution, and reasonable attorneys' fees and costs, for Defendants' violations of his rights under California laws.

**JURISDICTION AND VENUE**

14. This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1331, 2201 and 2202. This is an action arising under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et. seq.

15. This court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a). Plaintiff Faraj's claims under the FEHA, the Unfair Business Practices Act, and California's policy are related, as all of Plaintiff's claims share common operative facts. Resolving all state and federal claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties.

16. Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b), because the events giving rise to Plaintiff Faraj's claims occurred in this District.

**PARTIES**

17. Plaintiff Faraj is a resident of San Diego, California, and is a person with a disability under the ADA and the FEHA. Plaintiff also has a record of disability within the meaning of these laws. Plaintiff is informed and believes, and thereon alleges, that Defendants also regard him as disabled within the meaning of these laws.

18. Defendant Marriott International is a Delaware corporation doing business in the state of California.  Defendant Marriott International operates over 1,000 Marriott properties, including the San Diego Marriott Marquis & Marina.  According to its Form 10K, for the properties it operates, Defendant Marriott International is "responsible for hiring, training, and supervising the managers and employees required."  Defendant Marriott International employs more than 100,000 employees, and is an entity covered by the ADA and the FEHA.

19. Defendant Host Marriott is a Delaware corporation owning more than 100 Marriott properties in the United States, including the San Diego Marriott Marquis & Marina.  Defendant Host Marriott employs 15 or more employees, and is an entity covered by the ADA and the FEHA.

20. Plaintiff Faraj is informed and believes, and thereupon alleges, that he is jointly employed by Defendant Marriott International and Defendant Host Marriott.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

21. On or about April 18, 2012, Plaintiff Faraj filed his Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), which was cross-filed with the Department of Fair Employment and Housing (DFEH).  The charge of discrimination alleged that Plaintiff Faraj was subject to disability-based discrimination as well as retaliation and interference.  Plaintiff Faraj further alleged that other employees with disabilities were similarly denied promotional opportunities on the basis of disability.

22. On July 2, 2012, Plaintiff Faraj received his "right to sue" letter from the DFEH and was notified that his claims under the FEHA would be tolled during the EEOC's continuing investigation.  On December 28, 2012, Plaintiff Faraj received his "right to sue" letter from the EEOC.

**CLASS ACTION ALLEGATIONS**

23. Plaintiff Faraj brings this case on behalf of himself and all persons similarly situated.  The class he seeks to represent is composed of all current and future applicants and employees who are qualified to apply for positions and who are denied equal promotional opportunities based on disability as a result of Marriott's inaccessible software.

24. Upon information and belief, at least 40 present and future applicants and employees are in the

proposed class.  The persons in the class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit both to the parties and to this Court.

25. There is a well-defined community of interest in the questions of law and fact regarding the parties to be represented, and common questions of law and fact predominate.

26. The claims of Plaintiff Faraj are typical of those of the class, and he and his counsel will adequately represent the class.

**STATEMENT OF FACTS**

27. From October 2005 to the present, Plaintiff Faraj has been employed by the Marriott Defendants.  He began as a Reservations Agent at the Reservation Center in Santa Ana, California.  In March 2007, he began working as a Group Housing Coordinator at the San Diego Marriott Marquis & Marina hotel, receiving a pay increase.  Since April 2008, he has worked as an Event Billing Specialist at the Marquis & Marina hotel.

28. Plaintiff Faraj has received positive performance reviews from Marriott.  Between 2007 and 2010, Plaintiff Faraj was assessed using a numeric scale of 1 to 4, with 1 being the best.  From 2007 to 2009, Mr. Faraj received scores between 1 and 2, rounded to 2.  In 2010, Plaintiff Faraj received a score between 1 and 2, rounded to 1 (the best score possible).

29. Plaintiff Faraj has participated in numerous Marriott committees and groups, including the task force on group housing for the La Jolla Marriott, the task force on group housing for the Anaheim Marriott, the billing committee, the Children's Miracle committee, and the environmental committee.

30. Plaintiff Faraj has been blind for all times relevant to his employment at Marriott.

31. Blind employees and applicants such as Mr. Faraj can and do use computer programs to successfully perform job functions, including the use of commercial software applications designed to run on popular operating systems like Microsoft Windows, Apple OS and Linux.  The information that is displayed on the video screen by the computer is made available non-visually to blind computer-users by means of a class of software referred to as "screen readers."  Screen reader software programs monitor the computer screen and convert the textual information displayed into audible synthesized

speech or into dynamic Braille on a device known as a "refreshable Braille display."  This technology enables blind employees to efficiently access many commercial software applications; and thus retain meaningful employment in a wide range of professions and industries.

32. From the time of his hiring, Plaintiff Faraj used a computer and several commercial software programs that were accessible to him without difficulty to perform the functions of his positions.  Mr. Faraj successfully completed his work by relying on a screen reader software program called Jobs Access with Speech ("JAWS").  The JAWS screen reader software program enables Mr. Faraj to manipulate textual data on his computer and quickly locate relevant information stored in Marriott's electronic databases.  By using screen reader software programs such as JAWS, Mr. Faraj and other blind Marriott employees successfully perform and continue to successfully perform their jobs.

33. Beginning in about 2008, Plaintiff Faraj began taking steps to try to advance to a management position with Marriott.  Management positions at Marriott require the use of a sales force automation ("SFA") software program called Siebel CRM (Customer Relation Management).  The version of Siebel CRM currently used by Marriott has been configured in such a way so that it is not accessible to disabled persons such as Plaintiff Faraj who use JAWS or other screen-reading software programs to access information.  The Siebel CRM program is highly customizable.  Marriott has customized its Siebel CRM configuration so that JAWS cannot access information and translate it into speech for the blind employees.

34. It is possible to configure Siebel CRM in such a way that it is accessible to blind employees.

35. But for the inaccessible SFA software, Plaintiff Faraj is qualified to perform all of the essential functions of the management positions he seeks to assume.  In 2004, he received a B.A. in Hospitality Business from the Eli Broad College of Business at Michigan State University, graduating with a 3.68 GPA.  He has nearly ten years of experience in the hospitality industry, including nearly eight years of stellar performance at Marriott.  He completed Marriott's management training program in April 2012. On or about September 30, 2011, HR Manager Moira Fox discussed possible promotions with Mr. Faraj and told him that his résumé demonstrated that he was more qualified than many of the candidates that Marriott had hired for management positions.

36. The access problems associated with Siebel CRM are well known to Marriott management. From 2008 to the present, Plaintiff Faraj has communicated on numerous occasions with Marriott management and human resources representatives about the access problems caused by Marriott's use of the Siebel CRM software in its management positions, and the impact of this inaccessible software on him and on other individuals with disabilities.  Among other Marriott managers and supervisors, Plaintiff Faraj spoke about the problems with Sue Werber, Senior Director of EEO/AA and HR Compliance, Cindy Frick, Vice President of Sales Information and Event Management Solutions, Mark Irskine, Director of Market Strategy, Sjaloom Stringer, Vice President of Sales & Marketing Training, Juan Cosentino, Senior Event Manager, Claudia Wible, Director of Event Management, and Teresa Cram and Moira Fox, Human Resources Managers.  During these conversations, Plaintiff Faraj requested changes and reasonable accommodations that would enable him to perform all duties of a manager position.

37. Marriott knows that its configuration of various software programs has the effect of denying blind employees and applicants with job opportunities.  Despite complaints from several blind employees, Marriott continues to engage in a pattern or practice of configuring software programs with reckless indifference to the rights of its blind employees and applicants.

38. From 2008 to 2011, Plaintiff Faraj repeatedly asked Mr. Cosentino and Ms. Wible that he be permitted to participate in Marriott's Management Development Program ("MDP").  Participating in MDP is a prerequisite for seeking and obtaining management positions at Marriott.  Plaintiff Faraj was not permitted to participate in the program during these years.  Plaintiff Faraj is informed and believes, and thereupon alleges, that he was excluded from this program on the basis of his disability and/or his need for changes and reasonable accommodations due to the inaccessible SFA software.

39. In March 2011, Plaintiff Faraj sent an email detailing his exclusion from the management training program to Ms. Cram, the human resources manager, and to Sue Werber, Marriott's Director of Equal Employment Opportunity.  Thereafter, Plaintiff Faraj was permitted to attend the management training program.  He completed the program in April 2012.

40. Once accepted into the management training program, Plaintiff's supervisors told him that he

could begin applying for management positions.  However, they also instructed him not to apply for any position requiring the use of the inaccessible SFA software.  Plaintiff Faraj applied for approximately 25 management positions, primarily sales manager positions, all of which require use of Siebel CRM.  He was rejected from all openings.  Plaintiff Faraj is informed and believes, and thereupon alleges, that he was rejected from these positions on the basis of his disability.

41. Plaintiff Faraj has learned of Marriott's plans to expand the use of the inaccessible Siebel CRM software.  Marriott is replacing the accessible software that Mr. Faraj uses in his current position – Marriott NGS – with Siebel CRM by the second quarter of 2013.  Plaintiff has complained to Marriott EEO Director Werber about these plans, but has received no substantive response.

42. Plaintiff Faraj has suggested to Marriott equally effective, less discriminatory alternatives to the existing Siebel CRM software.  Plaintiff is informed and believes, and thereupon alleges, that others have also suggested to Marriott such alternatives.

43. Effective, less discriminatory alternatives  to Marriott's inaccessible configuration of Siebel CRM and other software programs include:

   (a) replacing Siebel CRM or other software programs with alternative, JAWS-accessible SFA software or other programs;

   (b) updating and upgrading the existing Siebel CRM software or other programs to make it JAWS-accessible system-wide; and

   (c) adding individualized modifications or scripts to the existing Siebel CRM software or other programs to make it JAWS-accessible to identified individuals with disabilities who use screen reader software.

44. According to published reports, Defendant Marriott International had revenues of $12.3 billion for 2011, and has assets worth $5.9 billion.  Defendant Host Marriott has assets totaling $11.3 billion.

45. After approaching Marriott management and human resources with complaints and concerns about the access problems associated with Siebel CRM, Plaintiff Faraj experienced retaliation.  First, immediately after a conversation between Marriott corporate headquarters and Mr. Faraj's direct manager about the accessibility of SFA software, Claudia Wible, Director of Event Management,

pulled Mr. Faraj aside and told him that managers were complaining about his "bad attitude" and that if he didn't like his job he could go somewhere else.

46. Second, after years of positive reviews, with each year's review more positive than the prior year, Plaintiff Faraj received an unexpectedly tepid review in 2011. On a scale using K, SP, P & U, with K being the best, and U being the worst, Plaintiff received a P – the second to lowest score. In 2012, Plaintiff received an SP – an improvement from 2011, but not as high as he had previously achieved. There were no changes in his job duties or performance to legitimately explain the discrepancy.

47. Third, out of retaliation, Defendants reduced Plaintiff Faraj's work duties so that he had very few assignments to keep himself productive during the work day. Tasks typically performed by Billing Event Specialists at other Marriott hotels were taken away from him and given to other departments. Notwithstanding his requests for more duties and responsibilities so that he could remain productive and prove his reliability, he was relegated to having insufficient work to fill his schedule. Because of the insufficient work assignments, Mr. Faraj feared his position might be eliminated.

### DECLARATORY RELIEF ALLEGATIONS

48. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the complaint.

49. An actual controversy exists between Plaintiffs and Defendants concerning their respective rights and duties. Plaintiffs contend that Defendants violated his rights under the ADA, the FEHA, the Unfair Business Practices Act, and California's public policy. Plaintiffs are informed and believe, and thereupon allege, that Defendants deny that these actions were unlawful. Declaratory relief is therefore necessary and appropriate.

50. Plaintiffs seek a judicial declaration of the rights and duties of the respective parties, including a declaration of Defendants' duty to comply with the law.

### INJUNCTIVE RELIEF ALLEGATIONS

51. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the complaint.

52. No previous application for the injunctive relief sought herein has been made to this Court.

53. If this Court does not grant the injunctive relief sought herein, Plaintiffs will be irreparably

harmed.

54. No plain, adequate, or complete remedy at law is available to Plaintiffs to redress the wrongs addressed herein.

**FIRST CLAIM FOR RELIEF**
Disability-Based Discrimination in Violation of
The Americans with Disabilities Act of 1990,
42 U.S.C. §§ 12112(a), (b)(1), (b)(3), (b)(5)(B), (b)(6), 12113(a)
On Behalf of Plaintiff Faraj and the Putative Class
Against All Defendants

55. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the complaint.

56. Plaintiff Faraj is a "qualified individual with a disability" as that term is defined by the ADA. 42 U.S.C. § 12111(8). He is able to perform the essential functions of his current position with or without reasonable accommodations. He is also able to perform the essential functions of the management positions he seeks with or without reasonable accommodations.

57. The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ... other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

58. The ADA prohibits an employer from "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee." 42 U.S.C. § 12112(b)(1).

59. The ADA prohibits an employer from "utilizing standards, criteria, or methods of administration – (A) that have the effect of discrimination on the basis of disability; or (B) that perpetuate the discrimination of others who are subject to common administrative control." 42 U.S.C. § 12112(b)(3).

60. The ADA prohibits an employer from "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(B).

61. The ADA prohibits an employer from using "selection criteria that screen out or tend to screen

out an individual with a disability or a class of individuals with disabilities" unless such criteria are shown to be job related and consistent with business necessity.  42 U.S.C. §§ 12112(b)(6), 12113(a).

62. In violation of the rights of Plaintiff Faraj and of the Plaintiff class to be free from disability-based discrimination, Defendants have implemented and are expanding a policy and practice of using and requiring the use of inaccessible SFA software or other programs, and have excluded from employment and promotional opportunities disabled persons who cannot access the software in the same way as nondisabled employees.

63. In so doing, Defendants have limited and classified Plaintiff Faraj and other similarly situated disabled persons who cannot access the software in the same way as nondisabled persons so as to adversely affect the employment opportunities of disabled persons.

64. In so doing, Defendants have utilized methods of administration that have the effect of discrimination against Plaintiff Faraj and others similarly situated on the basis of disability.  Defendants have perpetuated disability discrimination by subjecting individuals to the common administrative control of systems relying upon Marriott's configuration of the Siebel CRM software or other programs.

65. In so doing, Defendants have excluded Plaintiff Faraj and others similarly situated from employment opportunities based upon their need for reasonable accommodations.

66. In so doing, Defendants have used selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities.  Without a job-related, business necessity justification, the requirement that Marriott managers – and more recently, additional Marriott employees – be able to access Siebel CRM or other software programs functions in the same way as nondisabled workers tends to screen out Plaintiff and the Plaintiff class from equal employment and promotional opportunities.

67. Plaintiff Faraj has suggested to Marriott and will demonstrate to the Court equally effective, less discriminatory alternatives to the existing Siebel CRM software or other programs, including:

    (a) replacing Siebel CRM or other software programs with alternative, accessible SFA software or other programs;

(b) updating and upgrading the existing configuration of the Siebel CRM software or other programs to make it accessible system-wide; and

(c) adding individualized modifications or scripts to the existing Siebel CRM software or other programs to make it accessible to identified individuals with disabilities.

Such changes would impose no undue hardship to Defendants.

68. Defendants' unlawful actions and inactions were and are intentional and/or done with reckless disregard to the rights of Plaintiff Faraj and the plaintiff class to be free from discrimination based on disability.

69. As a proximate result of the unlawful acts alleged herein, Plaintiff Faraj has suffered injuries, including emotional distress injuries and lost employment opportunities.

70. Plaintiff Faraj is entitled to compensatory damages, any lost benefits and compensation, injunctive and declaratory relief, and attorneys' fees and costs.

71. The plaintiff class is also entitled to relief, including injunctive and declaratory relief, attorneys' fees and costs, and other relief deemed appropriate by the Court.

**SECOND CLAIM FOR RELIEF**
Interference in Violation of
The Americans with Disabilities Act of 1990,
42 U.S.C. § 12203(b)
On Behalf of Plaintiff Faraj and the Putative Class
Against All Defendants

72. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the complaint.

73. The ADA prohibits "any person" from "interfer[ing] with any individual in the exercise or enjoyment of … any right granted or protected by this chapter."  42 U.S.C. § 12203(b).

74. By implementing and expanding a policy and practice of using and requiring the use of an inaccessible configuration of Siebel CRM software or other programs for management and non-management positions, and by refusing to address the access problems raised by Plaintiff Faraj and others, Defendants have interfered with the rights of Plaintiff Faraj and of the Plaintiff class under the ADA.

75. Defendants' unlawful actions and inactions were and are intentional and/or done with reckless

disregard to the right of Plaintiff Faraj and the plaintiff class to be free from discrimination based on disability.

76. As a proximate result of the unlawful acts alleged herein, Plaintiff Faraj has suffered injuries, including emotional distress injuries and lost employment opportunities.

77. Plaintiff Faraj is entitled to compensatory damages, any lost benefits and compensation, injunctive and declaratory relief, and attorneys' fees and costs.

78. The plaintiff class is also entitled to relief, including injunctive and declaratory relief, attorneys' fees and costs, and other relief deemed appropriate by the Court.

**THIRD CLAIM FOR RELIEF**
Retaliation and Interference in Violation of
The Americans with Disabilities Act of 1990,
42 U.S.C. § 12203(a), (b)
On Behalf of Plaintiff Faraj Against All Defendants

79. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the complaint.

80. The ADA prohibits any person from discriminating against any individual for opposing any act made unlawful by the Act, and from interfering with any individual in the exercise or enjoyment of his or her rights under the Act.  42 U.S.C. § 12203(a), (b).

81. In making complaints and in requesting changes and reasonable accommodations related to the inaccessible configuration of the Siebel CRM software or other programs, Plaintiff Faraj engaged in protected activities under the ADA, and was exercising or attempting to exercise his rights.

82. On the basis of such protected activities, Defendants subjected Plaintiff Faraj to threats, reduced duties and less positive reviews.

83. Defendants' unlawful actions were intentional, willful, malicious and/or done with reckless disregard to Plaintiff Faraj's right under the ADA to be free from retaliation and interference.

84. As a proximate result of the unlawful acts alleged herein, Plaintiff Faraj has suffered injuries, including emotional distress injuries and lost employment opportunities.

85. Plaintiff Faraj is entitled to compensatory damages, any lost benefits and compensation, injunctive and declaratory relief, and attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
Disability-Based Discrimination in Violation of
The Fair Employment and Housing Act,
Cal. Gov't Code § 12940(a), (i)
On Behalf of Plaintiff Faraj Against All Defendants

86. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the complaint.

87. It is unlawful under the FEHA for an employer to discriminate because of the physical disability of any person.  Cal. Gov't Code § 12940(a).  It is further unlawful for any person to aid or abet practices prohibited by the FEHA.  Cal. Gov't  Code § 12940(i).

88. In violation of Plaintiff Faraj's right to be free from disability-based discrimination, Defendants have implemented and are expanding a policy and practice of using and requiring the use of an inaccessible configuration of the Siebel CRM software or other programs, and have excluded Plaintiff from employment and promotional opportunities based on his disability.

89. Defendants' unlawful actions and inactions were and are intentional and/or done with reckless disregard to the right of Plaintiff Faraj to be free from discrimination based on disability.

90. As a proximate result of the unlawful acts alleged herein, Plaintiff Faraj has suffered injuries, including emotional distress injuries and lost employment opportunities.

91. Plaintiff Faraj is entitled to compensatory damages, any lost benefits and compensation, injunctive and declaratory relief, and attorneys' fees and costs.

**FIFTH CLAIM FOR RELIEF**
Retaliation in Violation of
The Fair Employment and Housing Act,
Cal. Gov't Code § 12940(a)
On Behalf of Plaintiff Faraj Against All Defendants

92. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the complaint.

93. It is unlawful under the FEHA for any employer to discriminate against any person because the person has opposed or has complained about practices forbidden by the FEHA.  Cal. Gov't Code § 12940(h).

94. In making complaints related to the inaccessible configuration of the Siebel CRM software or other programs, Plaintiff Faraj opposed or complained about practices forbidden by the FEHA.

95. On the basis of such protected activities, Defendants subjected Plaintiff Faraj to threats, reduced

duties and less positive reviews.

96. Defendants' unlawful actions were intentional, willful, malicious and/or done with reckless disregard to Plaintiff Faraj's right under the FEHA to be free from retaliation and interference.

97. As a proximate result of the unlawful acts alleged herein, Plaintiff Faraj has suffered injuries, including emotional distress injuries and lost employment opportunities.

98. Plaintiff Faraj is entitled to compensatory damages, any lost benefits and compensation, injunctive and declaratory relief, and attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**
Unfair Business Practices in Violation of
California's Unlawful Business Practices Act,
Cal. Business & Prof. Code § 17200, *et seq*.
On Behalf of Plaintiff Faraj Against All Defendants

99. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the complaint.

100. Unfair practices prohibited by California's Unfair Business Practices act include "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

101. By implementing and expanding a policy and practice of using and requiring the use of an inaccessible configuration of the Siebel CRM software or other programs for management and non-management positions, and by refusing to address the access problems raised by Plaintiff Faraj and others, Defendants have committed unlawful and unfair business practices, including but not limited to the following:

    (a)    Discriminating against Plaintiff Faraj and others on the basis of disability in violation of Title I of the ADA;

    (b)    Interfering with Plaintiff Faraj's rights under the ADA and the rights of others under the ADA in violation of Title V of the ADA;

    (c)    Retaliating against Plaintiff Faraj based upon protected activities in violation of Title V of the ADA;

    (d)    Discriminating against Plaintiff Faraj because of his physical disability in violation of the FEHA; and

    (e)    Retaliating against Plaintiff Faraj based upon protected activities in violation of the

1    FEHA.

2    102.  As a proximate result of the unlawful and unfair business practices of Defendants, and each of

3    them, Plaintiff Faraj has suffered injury in fact and has lost money or property.

4    103.  Plaintiff Faraj is entitled to restitution, declaratory relief, injunctive relief, and attorneys' fees

5    and costs.

6                                   **RELIEF REQUESTED**

7         WHEREFORE, Plaintiff Faraj respectfully requests that this Court:

8         1.    Certify a class of disabled employees and order class-wide relief consistent with the Court's

9    certification;

10        2.    Grant all injunctive relief necessary to bring Defendants into compliance with the ADA, the

11   FEHA, and the Unfair Business Practices Act;

12        3.    Grant declaratory relief;

13        4.    Order Defendants to pay Plaintiff Faraj for any compensation denied or lost to him by

14   reason of Defendants' violations of the law, in an amount to be proven at trial;

15        5.    Order Defendants to pay Plaintiff Faraj compensatory damages for emotional pain and

16   suffering in an amount to be proven at trial;

17        6.    Order Defendants to pay restitution;

18        7.    Order Defendants to pay plaintiffs reasonable attorneys' fees, reasonable expert witness

19   fees, and other costs of the action;

20        8.    Order Defendants to pay interest on such damages as are appropriate, including pre- and

21   post-judgment interest;

22        9.    Grant such other and further relief as this Court may deem proper and just.

23                                   **JURY DEMAND**

24        Plaintiffs demand trial by jury of all claims and causes of action so triable.

25   ///

26   ///

27   ///

28   ///

Respectfully submitted,

THE LEGAL AID SOCIETY
EMPLOYMENT LAW CENTER


Date:  April 15, 2013          By:     _____
                                        s/ Claudia Center
                                        **Attorney for Plaintiffs**
                                        **Email:  center@las-elc.org**


TRE LEGAL PRACTICE, LLC


Date:  April 15, 2013          By:     _____
                                        s/ Timothy Elder
                                        **Attorney for Plaintiffs**
                                        **Email:  telder@trelegal.com**